# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDWIN CINTRON PAGAN**<br><br>Plaintiff<br><br>**vs.**<br><br>**BPP RETAIL PROPERTIES LLC**<br><br>Defendant | **CIVIL ACTION** |

## COMPLAINT

**TO THE HONORABLE COURT:**

The plaintiff, Edwin Cintron Pagan (hereinafter "plaintiff" or "Mr. Edwin"), on behalf of his own interests, and respectfully requests a **permanent injunction**[1] against **BPP Retail Properties LLC** in accordance with the Title III of the Americans with Disabilities Act, and its applicable regulation.

### I.     PARTIES

1. Plaintiff's name is **Edwin Cintron Pagan**. His mailing address is: RR 3 Box 10155-25 Toa Alta, PR 00953 - 8047. His physical address is Carr. 861 KM 6.1 Bo.Piñas La Campiña To Alta. His phone number is: (787) 359-5437.

2. The defendant's name is **BPP Retail Properties LLC** The defendant is the owner, lessor, lessee and/or operator of the public accommodations place identified in paragraphs 7 and 8.

---
[1] A preliminary injunction is not requested at this time.

## II.  ALLEGATIONS

### A. Regarding the Plaintiff's Medical Conditions

3. Mr. Edwin Cintron Pagan, due to a motor vehicle accident that took place on June 28, 1995, suffered the amputation of his right leg. Additionally, he was diagnosed with prostate cancer and, as a result, is currently undergoing psychiatric treatment.

4. Mr. Edwin Cintron Pagan, as a result of this accident, has a substantial mobility limitation compared to the average person in the general population. He uses a scooter, which is his preferred means of mobility, and also owns and occasionally uses a wheelchair. For example, the amputation of his leg has made it difficult for him to perform the same activities he once did, as he can no longer carry out basic actions such as walking, bending, standing, or running, relying instead on a wheelchair for movement. Additionally, his prostate cancer diagnosis and ongoing psychiatric treatment have led to further physical limitations, impacting his ability to move with agility, endure extended periods of physical activity, and remain standing for long durations. These conditions, combined with the amputation, have increased his daily mobility challenges, making him increasingly dependent on assistive devices to carry out his everyday activities.

5. The major life activities substantially impacted by Plaintiff's impairments are the following: firstly, walking, as the amputation of his right leg prevents him from moving independently, requiring him to rely on a scooter or wheelchair; furthermore, standing is limited to short periods due to both the amputation and the physical restrictions stemming from his prostate cancer diagnosis and psychiatric treatment. Additionally, bending has become challenging, as the loss of his leg has made it difficult to perform movements that require flexibility. Moreover, his endurance and physical activity are affected, as his

diagnosis and treatment limit his ability to engage in activities that require prolonged physical exertion. Finally, his overall mobility is considerably restricted, affecting his agility and increasing his dependence on assistive devices for daily activities. Together, these conditions also limit his ability to perform manual tasks that require balance, stamina, and strength, thereby reducing his independence in carrying out his daily activities.

6. Likewise, plaintiff is registered as an individual with disabilities with the Department of Health of Puerto Rico and he owns a valid permanent handclapped parking permit issued by the Department of Transportation of Puerto Rico and Public Works of Puerto Rico. This permanent disabled person's license permit allows Plaintiff to legally park in parking spaces designated as accessible and for use by persons with disabilities.

**B. Concerning the Properties in Question and the Court's Jurisdiction**

7. The property in controversy is a public accommodation known as **Centro Comercial Bayamon Oeste**, located at Carr. 2 KM 14.7 Bo Hato Tejas, Bayamon, PR 00958, with coordinates 18.409708678002687, -66.18730044760935.

8. The defendant is the owner, landlord, tenant, and/or operator of the property mentioned above.

**C. Discrimination Against the Plaintiff Due to Disability**

9. The Plaintiff has frequently visited the Shopping Center over the past few years in the company of his wife. One of his most recent visits was on March 23, 2024.

10. The purpose of this visit was to go to the establishment called JRC Tax & Accounting to file his annual tax returns. However, on previous occasions, he has also visited the Centro Comercial Bayamon Oeste to accompany his wife shopping for clothing and to dine at fast-food restaurants.

11. As a result of his visit, Mr. Edwin identified the following architectural barriers at the Centro Comercial Bayamon Oeste located at Carr. 2 KM 14.7 Bo Hato Tejas, Bayamon:

**Exterior of the Property**

a. **Lack of Proper Signage for Accessible Parking Spaces:** Mr. Edwin had difficulty identifying accessible parking spaces in front of Planet Fitness, Burger King, Banco Popular, Always 99, and Kentucky Fried Chicken due to the lack of adequate signage. Without visible, properly positioned signs, it was challenging to locate designated spaces, causing confusion and unnecessary navigation. Proper signage with reflective symbols and clear text would facilitate the identification and accessibility of these spaces.

b. **Excessive Ramp Slope:** The ramps in the parking areas in front of Me Salve, and Banco Popular had slopes that were too steep, posing a risk for individuals with mobility impairments. This excessive incline forced Mr. Edwin to exert additional effort when using his scooter, compromising his stability and increasing the likelihood of accidents on these steep surfaces.

c. **Unstable and Cracked Parking Surfaces:** The parking areas in front of Advanced Auto Parts, Me Salve, JRC Tax & Accounting, and Kentucky Fried Chicken had cracked and uneven surfaces, compromising safety. The presence of cracks and unstable pavement made it difficult for Mr. Edwin to navigate safely, as his scooter requires a smooth surface to maneuver without the risk of tipping or getting stuck.

d. **Inadequate Aisle Width and Parking Space Configuration:** The accessible parking spaces in front of Burger King did not have the required width and configuration to allow for safe maneuvering. Mr. Edwin encountered a severe deficiency in the levels of the circulation aisle, which prevented him from moving adequately. The narrow aisles and lack of clear markings impacted his ability to safely enter and exit his vehicle. This layout does

4

not provide sufficient space for individuals using mobility devices to maneuver without the risk of injury, significantly compromising his accessibility during his visit.

e. **Insufficient Number of Accessible Parking Spaces:** Mr. Edwin did not find enough accessible parking spaces in front of Always 99 and Club de Tiro Cowboys, which forced him to park farther from the entrances. This made accessing these establishments more difficult and required additional time to reach them safely.

f. **Improper Ramp Connections to Circulation Aisles:** The ramps in the parking areas in front of Burger King and Kentucky Fried Chicken did not connect directly to accessible routes, exposing Mr. Edwin to traffic risks as he had to navigate across vehicle paths to reach the sidewalk. This improper connection created unnecessary obstacles and increased the danger during access.

g. **Steep Curb Ramp Flares:** In the parking areas in front of Trampoline Park and Banco Popular, the curb ramp flares were excessively steep, making it difficult for Mr. Edwin to maintain control of his scooter. These steep inclines increased the likelihood of tipping, creating a hazardous environment that compromised his safety while navigating these ramps.

h. **Unsafe Pedestrian Route from Accessible Parking:** The ramp in front of First Bank directed individuals toward a vehicle circulation area instead of a continuous pedestrian route, forcing Mr. Edwin to cross a traffic area and exposing him to unnecessary risks. This design flaw complicated safe access to the building entrance.

i. **Accessible Parking Signage with Low Contrast and Poor Positioning:** The accessible parking signage in front of the Facility lacked adequate contrast, proper finishing, and correct positioning. The accessible symbols were difficult to see due to low contrast, and

some signs were tilted, making them challenging to identify. This signage deficiency made it difficult for Mr. Edwin to locate accessible parking spaces suitable for his mobility needs, adding unnecessary obstacles to his access experience.

12. The barriers at the **Exterior of the Property** are directly related to Mr. Edwin substantial conditions and limitations. The parking areas in front of Planet Fitness, Burger King, Banco Popular, Always 99, and Kentucky Fried Chicken lack visible signage for accessible parking spaces, which substantially affects Mr. Edwin. Due to his limited mobility, he relies on clearly marked spaces to avoid the additional physical effort required to locate accessible parking. Therefore, removing this barrier by installing proper signage would allow him to quickly identify accessible spaces, reducing physical strain and minimizing the risk of fatigue or accidents. Furthermore, the existing signs, where present, lack adequate contrast and positioning, making them difficult to see. The signs are tilted or poorly placed, complicating Mr. Edwin's ability to identify accessible spaces effectively. Enhancing these signs with reflective symbols and proper positioning would further assist him in locating these spaces quickly. Additionally, the steep inclines of the ramps in the parking areas in front of Me Salve, and Banco Popular make it challenging for Mr. Edwin to safely navigate with his scooter, thus increasing the risk of tipping or losing control. Reducing the slope of these ramps would not only improve his stability but also help prevent falls, providing him with safer access to the property. Moreover, the cracked and uneven surfaces in the parking areas in front of Advanced Auto Park, Me Salve, JRC Tax & Accounting, and Kentucky Fried Chicken further compromise Mr. Edwin's safety, as his scooter cannot navigate smoothly on such surfaces without the risk of tipping or becoming stuck. Consequently, repairing these surfaces would offer a stable, slip-resistant

path, allowing him to move safely from his parking space to the entrance. Similarly, the narrow aisles and poor layout of parking spaces in front of Burger King restrict maneuverability, making it difficult for Mr. Edwin to enter and exit his vehicle safely. Adjusting the layout to provide wider aisles would not only ease his maneuvering but also reduce the risk of injury. Finally, the insufficient number of accessible spaces in the parking areas in front of Always 99 and Club de Tiro Cowboys forces Mr. Edwin to park farther from the entrance, increasing the physical exertion needed to access these facilities. Therefore, adding more accessible spaces closer to entrances would reduce his physical strain, providing him with a more convenient and safe means of entry, thereby supporting his independence in performing daily activities.

13. Mr. Edwin feels discouraged from visiting the Bayamon Oeste Shopping Center due to the accessibility barriers he has previously encountered and is aware of. These barriers not only hindered his mobility and his ability to move safely and independently but also caused him sadness and frustration, as he could not enjoy an accessible and dignified experience. The lack of adequate accessibility directly impacts his emotional well-being, making him feel that the space is not designed to include individuals with limited mobility like himself, ultimately deterring him from returning to the Centro Comercial Bayamon Oeste.

14. The plaintiff will be affected in the future by the barriers that exist on the property because:

a. The plaintiff plans to return to the property within the next few weeks due to the variety of services offered by certain businesses within the shopping center, such as JRC Tax & Accounting, which provides him with tax and accounting services, as well as the fast-food establishments he enjoys visiting. The variety and proximity of these services make the property a primary option for the plaintiff, despite the significant barriers he faces there.

b.  The property is very convenient for the plaintiff, as it is located only 8 to 10 kilometers, or approximately 17 to 20 minutes by car, from his place of residence, which is a reasonable distance. This proximity allows him to access necessary services without requiring lengthy travel times, an essential factor given his mobility limitations.

15. The plaintiff encountered each of the aforementioned barriers, interacted with them, and was adversely affected during the visit due to his disability. By way of example, the plaintiff encountered cracks and uneven surfaces in the parking area in front of JRC Tax & Accounting, which made it challenging for him to maneuver safely with his scooter. The irregularities in the pavement increased the risk of tipping and getting stuck, making access to the business difficult and unsafe due to the lack of a stable and suitable surface for his mobility.

16. To resolve the **exterior barriers** encountered, the following improvements can be made: First, the lack of visible signage for accessible parking spaces on the exterior of the property could be addressed to meet requirements by adding clearly visible, properly positioned signage in front of each designated accessible parking space to ensure that individuals with mobility impairments can quickly identify these spaces. This signage should include reflective symbols, clear text, and comply with required height specifications. Alternatively, pavement markings indicating accessibility could be added to further guide individuals like Mr. Edwin to these spaces. Second, the steep inclines of the ramps in the parking areas could be corrected by reducing the ramp slope to a maximum ratio of 1:12, allowing individuals using mobility devices, such as Mr. Edwin's scooter, to navigate these areas more safely. Alternatively, if regrading is not feasible, a secondary ramp with a compliant slope could be installed adjacent to the existing one, providing a safer option.

Third, the cracked and uneven surfaces in the accessible parking areas could be addressed by resurfacing and leveling the pavement, creating a firm, stable, and slip-resistant path, reducing the risk of tipping or becoming stuck. Alternatively, minor repairs using patching materials could temporarily resolve the issue, although full resurfacing would be ideal for long-term compliance. Fourth, the narrow aisles and inadequate layout of accessible parking spaces could be addressed by widening the aisles and rearranging parking spaces to allow safer access for individuals with mobility devices. Alternatively, if space constraints exist, clearly marked accessible spaces could be added in alternative nearby locations with adequate aisle width. Fifth, the insufficient number of accessible parking spaces in the parking areas could be addressed by designating additional accessible spaces closer to facility entrances, reducing the physical strain for individuals with mobility impairments, such as Mr. Edwin. Alternatively, if immediate restructuring is not possible, temporary accessible spaces could be designated with clear signage and markings until permanent modifications are completed. Sixth, the improper connection of ramps to circulation aisles in the parking areas in front of Burger King and Kentucky Fried Chicken could be addressed by ensuring that ramps connect directly to accessible routes, avoiding intersections with vehicle paths. Realigning the ramps would reduce exposure to traffic risks for individuals with mobility impairments. Alternatively, clear signage could temporarily guide users along safe routes until proper structural modifications are made. Seventh, the elevated flares on curb ramps in the parking areas in front of Trampoline Park and Banco Popular could be resolved by reducing the slope of the flares to a maximum of 1:10. This would make the ramps safer for individuals like Mr. Edwin, who require lower inclines to navigate without risk of tipping. Alternatively, warning signs and textured

surfaces could be temporarily added to alert users of the steep slopes until adjustments are made. Eighth, the incorrect alignment of ramps in the parking area in front of First Bank could be addressed by ensuring that ramps connect directly to pedestrian paths, avoiding projection into vehicle circulation areas, thus reducing unnecessary traffic exposure for individuals with mobility impairments. Alternatively, temporary barriers or warning signage could be used until permanent alignment modifications are made. Ninth, the deficient signage for accessible parking spaces could be addressed by improving the current signs to include adequate contrast, reflective symbols, and proper positioning to ensure visibility for individuals with mobility impairments, such as Mr. Edwin. Addressing the signage deficiencies would allow him to quickly identify accessible spaces, avoiding unnecessary navigation.

17. The elimination of these barriers by complying with ADA accessible design standards will allow Mr. Edwin to visit the Centro Comercial Bayamon Oeste, located at Carr. 2 KM 14.7 Bo Hato Tejas, Bayamon, autonomously, safely, and with dignity, on equal terms with any other person.

18. Mr. Edwin feels discouraged from visiting the Centro Comercial Bayamon Oeste; however, he will return once the architectural barriers have been removed. Only when all barriers related to his disability are eliminated can he return and have full, equal, dignified, and safe access.

19. Mr. Edwin reserves the right to return to the property at any time for any lawful purpose, even if it means subjecting himself to discriminatory conditions, experiencing inconveniences that non-disabled individuals do not experience, or risking his personal safety and physical integrity. Just as a non-disabled person may choose to subject

themselves to hostile conditions that are not illegal, such as a long and interminable checkout line, the plaintiff will subject himself to the defendant's created unlawful discriminatory conditions, regardless of his dignity or even if it puts his physical integrity at risk.

20. Due to the current lack of information regarding the construction and alteration history of the property, it is alleged that: the property was constructed and/or altered after March 15, 2012; alternatively, the property was constructed or altered after January 26, 1993; alternatively, the property was constructed prior to January 26, 1993, but the defendant has the financial resources to ensure that the property complies with the most current building codes.

### III. LEGAL REMEDIES REQUESTED

WHEREFORE, the plaintiff very respectfully requests the following legal remedies:

a. Regarding the Defendant, mentioned in this complaint, a permanent injunction in favor of Mr. Edwin in accordance with 42 USC §12188 (a)(2) and 28 CFR §36.504 (a) ordering the defendant to eliminate the architectural barriers that exist in the exterior, interior, and restrooms of the property by complying with the applicable accessible design guidelines according to their date of construction and alteration. If the property existed on January 26, 1993, it must be altered to comply with the most recent accessible design guidelines promulgated under the ADA to the maximum extent economically feasible for the defendant, either immediately or through a long-term transition plan toward full compliance. If the creation of a transition plan toward compliance is not economically feasible, or if the necessary changes are not structurally possible, it is requested to order

    that access to goods and services be made available through alternate methods in accordance with 42 U.S.C.§ 12182(b)(2)(A)(v).

b. A permanent statutory injunction pursuant to 42 USC § 12188(a)(2) and 28 CFR §36.504(a) ordering the defendant to eliminate the existing discriminatory policies and practices that currently prevent the elimination of architectural barriers and/or policies and practices that prevent the provision of reasonable accommodations necessary for equal treatment in the Centro Comercial Bayamon Oeste.

c. In case the defendant continues its discriminatory practices, it is requested that, pursuant to 42 USC §12188 (a)(2) and 28 CFR §36.504, the properties be ordered closed as a precautionary measure to stop the discriminatory condition until it has been irrefutably certified to the satisfaction of the court that the discrimination has been eliminated;

d. Nominal damages for one dollar.

e. Attorney's fees, costs, and litigation expenses.

f. The provision of any other remedy that is fair and appropriate, in law or equity, and that has not been expressly requested but is appropriate as a matter of law.

**RESPECTFULLY SUBMITTED**.

**Dated**: November 7, 2024.

**VELEZ LAW GROUP LLC**
Civil Rights Division

s/Jose Carlos Velez Colon
Jose Carlos Velez Colon
USDC-PR 231014

RR 18 BOX 1390 #311
San Juan, PR 00926-9821

E:   vlg@velezlawgroup.com
T:   (787)-422-1881

**PLAINTIFF'S ATTORNEY**